**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Fairview Health Services,

Plaintiff,

v.

United Healthcare Services, Inc. and UnitedHealthcare Insurance Company,

Defendants.

Case No. 26-CV-4245

**COMPLAINT**

---

## I. INTRODUCTION

1. In June of this year, Fairview Health Services ("Fairview") declined to renew its contract with UnitedHealthcare ("UHC") Medicare Advantage ("MA") plans, effective January 1, 2027.

2. Nevertheless, UHC and its affiliated corporate entities have falsely represented to patients that Fairview remains in-network for 2027 UHC MA plans.

3. Selecting a health insurance plan can be confusing under ordinary circumstances, but UHC's false statements create a real risk of widespread confusion for MA enrollees and the public. Many of Fairview's patients will select a plan based on their ability to continue using those health benefits with Fairview. Fairview's patients who are currently enrolled in UHC MA plans may renew their coverage based on UHC's false representations only to discover that their physician is not actually in-network with UHC.

4. The Medicare Annual Enrollment Period begins October 15, 2026 and ends on December 7. If UHC does not cease and correct the false statements regarding its

network, Fairview's current patients and Medicare beneficiaries shopping for coverage (mostly Minnesota seniors) will be confused about whether Fairview is in-network with UHC and they could lose their chance to choose a different plan for 2027 that allows them to see providers at Fairview during the annual enrollment period.

5. Fairview risks losing patients who enroll in UHC plans for 2027 under the false impression that Fairview is in-network, as those patients will not be able to use their benefits with Fairview and will need to establish care with a different provider to access their Medicare benefits. UHC's false statements will cause reputational harm to Fairview by interfering with its existing and prospective patient relationships.

6. Fairview will also incur additional administrative costs and burdens to correct the confusion created among its current and prospective patients as a direct result of UHC's false statements.

7. To correct UHC's false statements in advertising and stop the imminent harm to Minnesota seniors, Fairview's Medicare patients, and Fairview, Fairview seeks injunctive relief and a temporary restraining order to halt UHC's unlawful conduct during the pendency of this litigation.

8. Absent court action prior to open enrollment on October 15, 2026, seniors will enroll in UHC plans under the false impression that Fairview is in-network and may not be able to switch plans to a plan where Fairview is in-network.

## II. JURISDICTION AND VENUE

9. This Court has jurisdiction over this action under 28 U.S.C. § 1331, as a claim in this case arises under the Lanham Act, 15 U.S.C. § 1125(a).

10. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

11. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201–2202.

12. Venue is appropriate in this district because Defendants are residents of the district and all the events giving rise to the claims herein occurred in the district. *See* 28 U.S.C. § 1391(b).

## III. PARTIES

13. Plaintiff Fairview Health Services is a Minneapolis-based nonprofit health system and one of the most comprehensive and geographically accessible systems in Minnesota.

14. Fairview provides care throughout the state of Minnesota in a wide variety of settings, including community and academic hospitals, primary and specialty care clinics, senior facilities, assisted living centers, rehabilitation centers, home health care, counseling, and pharmacies.

15. Fairview has been nationally recognized for its commitment to the Minnesota communities it serves. In 2025, the American Hospital Association awarded Fairview the Foster G. McGaw Prize, which honors one health system annually for a deep and sustained commitment to community health.

16. Defendant UnitedHealthcare Services, Inc., is a Minnesota corporation and subsidiary of UnitedHealth Group, Inc. ("UHG"). UnitedHealthcare Services, Inc. provides administrative services to other entities within the UnitedHealth Group, Inc. conglomerate,

including services related to advertising MA plans to Minnesotans and maintaining the online provider directory for MA plans.

17. Defendant UnitedHealthcare Insurance Company is a Connecticut corporation that insures, either on its own or through one of its affiliated companies, MA plans sold in Minnesota.

18. Defendants (collectively "UHC") operate the largest MA insurer in the United States. In 2025, UHC earned revenues of $171.3 billion in its Medicare and retirement segment, a significant portion of UHG's overall consolidated revenue of $447.6 billion in the same year.

## IV. FACTUAL ALLEGATIONS

### A. MA Plans Provide Medicare Benefits to Minnesota Patients.

19. Medicare beneficiaries may choose to enroll in either Original Medicare or an MA Plan.

20. Medicare Parts A and B, also known as Original Medicare, provide health benefits coverage to Medicare patients from the federal government, administered by federal contractors.

21. Medicare Part C, also known as MA, provides health benefits coverage through private health insurance companies like Defendant.

22. Unlike Original Medicare, MA plans receive a per capita payment, and any applicable risk adjustment payments, from the federal government for each Medicare enrollee who elects to enroll in that plan.

23. MA plans contract with health care providers to create a network of providers. To ensure the fullest possible coverage and the lowest applicable cost-sharing, plan enrollees must use in-network providers.

24. Fairview is enrolled with Medicare and therefore serves patients enrolled in Original Medicare and is entitled to payment for medically necessary services it renders to those patients consistent with Medicare requirements.

25. Fairview has renewed contracts with several Minnesota MA plans for 2027, including plans administered by Blue Cross Blue Shield of Minnesota and Medica. Fairview is actively negotiating with HealthPartners.

26. The plan year for MA plans begins on January 1 of each year.

27. By October 1, MA plans must publish information about the plans that will be offered for the following plan year.

28. The Medicare Annual Enrollment Period for 2027 Medicare plans begins on October 15, 2026 and runs through December 7, 2026.

**B. Fairview Declines to Participate in UHC MA Plans for 2027.**

29. UHC offers several MA plans in Minnesota.

30. Fairview previously elected to participate in UHC's MA plan network, and its current contract for participation in these plans ends on December 31, 2026.

31. Fairview has served approximately 33,000 UHC MA patients annually.

32. For years, Fairview has faced challenges with UHC MA plans, including payment delays, under-reimbursement, burdensome prior authorization requirements, and

unreasonable payment denials for medically necessary care that would have been covered under Original Medicare.

33. On June 9, 2026, Fairview provided UHC with formal notice of its intent not to renew its participation in UHC's MA Benefit Plans at the conclusion of the current agreement term, December 31, 2026.

34. Fairview's June 9, 2026 notice also expressly stated that Fairview would not renew or extend its contract for UHC's MA plans for plan year 2027.

35. On September 24, 2026, in a meeting with UHC, Fairview asked UHC to confirm that Fairview would not appear in UHC provider directories for plan year 2027, in light of Fairview's decision not to renew its contract with UHC for MA plans.

36. UHC reacted to this question with surprise and was not able to provide an answer. Instead, UHC promised to follow up with other UHC teams and confirm.

37. The same day, Fairview contacted UHC to request formal written assurance that UHC would not identify Fairview as a participating or in-network provider in any UHC MA provider directory or other network information made available to beneficiaries.

38. On Monday, September 28, Fairview's legal department delivered a written notice to UHC reiterating that Fairview will not, under any circumstances, contract with UHC for MA plans for 2027. This letter again requested that UHC confirm Fairview would not be listed as in-network for 2027 UHC MA plans.

39. UHC did not even acknowledge receipt of that request until September 29, did not provide any substantive response, and simply confirmed that UHC was reviewing with internal legal and operational teams.

40. Fairview is not in negotiations with UHC, does not plan to reopen any negotiations with UHC, and will not, under any circumstances, contract with UHC MA plans for 2027.

**C. UHC Falsely Informs Medicare Beneficiaries Fairview Will Remain In-Network for Plan Year 2027.**

41. MA plans must issue an Annual Notice of Change ("ANOC") to Medicare enrollees by September 30, 2026.

42. The ANOC must describe certain changes to the plan between plan years, including providers and hospitals that have been added or removed from the network.

43. UHC failed to update the ANOCs for its current Medicare enrollees to inform those enrollees that Fairview was no longer in-network.

44. Section 1.3 of the 2027 ANOCs for UHC MA plans identifies "Changes to the Provider Network," but does not disclose that Fairview will no longer be in network.

45. Instead, Section 1.3 of the 2027 ANOCs for UHC MA plans states generically that "Our network of providers has changed for next year," with hyperlinks to UHC's online "2027 Provider Directory." According to the ANOCs, this directory is also available from UHC in print by mail upon request.

46. UHC's 2027 Provider Directory for MA plans falsely identifies Fairview as an in-network provider for plan year 2027.

47. As of October 1, 2026, UHC's online directories for all of its 2027 MA plans state that Fairview will be in-network.

48. For example, UHC identifies the Fairview Hospital University West Bank Campus location as in-network for its 2027 AARP Medicare Advantage UHC MN-0001 (PPO) plan:




49. By way of further example, a general search on October 1, 2026 of UHC's MA Provider Directory for hospitals in Edina, Minnesota shows numerous Fairview facilities as "In-network":

10/1/26, 9:57 AM Facility results for Hospitals | Find Care

United Healthcare

**Facility results for Hospitals** **Date:** October 01, 2026

(1) **Pn Methodist Hospital** In-network
General Acute Care Hospital Facility ID **000696009**
English
6500 Excelsior Blvd, Minneapolis, MN • 1.4 Miles away
(952) 993-5000

(2) **Fairview Hospital University** In-network
General Acute Care Hospital Facility ID **002231111**
6363 France Ave S Ste 610, Minneapolis, MN • 1.9 Miles away
(952) 836-3645

(3) **Fairview Southdale Hospital** In-network
General Acute Care Hospital Facility ID **000688428**
English
6363 France Ave S Ste 200, Edina, MN • 1.9 Miles away
(952) 924-5000

(4) **Fairview Hospital University Minneapolis** In-network
General Acute Care Hospital Facility ID **008925245**
English
6545 France Ave S Ste 450, Minneapolis, MN • 2.0 Miles away
(952) 924-1520

50. UHC's online directory similarly falsely reflects that Fairview providers and facilities will be in-network with each of its 2027 MA plans.

51. In addition, the printed materials describing UHC's provider directory for each MA plan for Hennepin County[1] include Fairview as an in-network provider and list hundreds of Fairview-affiliated providers and Fairview-owned facilities:

[1] This example is for the Hennepin County provider directory for UHC's "UHC Complete Care Support MN-8 (PPO C-SNP) plan, available online here: https://www.uhc.com/medicare/alphadog/UHMN27LP0440649_001

**Hospitals**

3303

**Minnesota - Hennepin**

**Minnesota**

**Hennepin**

**General Hospital**

Abbott Northwestern Hospital[8]
NPI #1356586093
State License #385390
800 E 28th St
Minneapolis, MN 55407
(612) 863-4000
Web Address: https://www.allinahealth.org

Fairview Hospital University[8]
NPI #1013994359
State License #00200
2312 S 6th St Ste F119
Minneapolis, MN 55454
(612) 672-6000

701 25th Ave S Ste 100
Minneapolis, MN 55454
(612) 672-6000

2512 S 7th St Ste 103
Minneapolis, MN 55454
(612) 365-8400

516 Delaware St SE
Minneapolis, MN 55455
(612) 625-4400

606 24th Ave S Ste 400
Minneapolis, MN 55454
(612) 273-2224

2450 Riverside Ave
Minneapolis, MN 55454
(612) 365-6777
Hours: M-F 08:00AM-05:00PM
Web Address: https://mhealthfairview.org

909 Fulton St SE Ste 214
Minneapolis, MN 55455
(612) 676-8459

606 24th Ave S Ste 200
Minneapolis, MN 55454
(612) 672-6000

909 Fulton St SE
Minneapolis, MN 55455
(612) 626-6688

701 25th Ave S Ste 300
Minneapolis, MN 55454
(612) 273-7111

2450 Riverside Ave FL 9
Minneapolis, MN 55454
(612) 273-4155
Hours: M-F 08:00AM-05:00PM
Web Address: https://mhealthfairview.org

6363 France Ave S Ste 610
Minneapolis, MN 55435
(952) 836-3645

909 Fulton St SE Ste 202
Minneapolis, MN 55455
(612) 273-6700

701 25th Ave S Ste 200
Minneapolis, MN 55454
(612) 365-6777

606 24th Ave S Ste 215
Minneapolis, MN 55454
(612) 273-4801

2512 S 7th St FL 3
Minneapolis, MN 55454
(612) 365-6777

606 24th Ave S Ste 300
Minneapolis, MN 55454
(612) 273-7112

**Hospitals**

52. These statements are false because Fairview has not renewed its contract with UHC MA plans for plan year 2027.

53. To the contrary, Fairview told UHC months ago that it would not renew its contract with UHC MA plans.

54. Fairview has expressly and unambiguously informed UHC that it will not participate in UHC's MA networks in 2027.

**D. UHC's False Statements to Medicare Patients Creates Substantial Confusion and Ongoing Harms to Minnesota Seniors.**

55. To help prepare patients for its transition to out-of-network status with UHC MA plans, Fairview has notified patients that it will no longer be in-network with UHC MA plans after December 31, 2026.

56. Fairview serves 33,000 UHC MA patients, the vast majority of whom are senior citizens aged 65 and older. In addition, Fairview serves Medicare patients under age 65 who have certain disabilities, End-Stage Renal Disease, or ALS.

57. Current UHC MA enrollees who are Fairview patients face substantial confusion because Fairview has informed them it will be out-of-network with UHC MA and UHC has now told them the opposite.

58. Without judicial intervention to stop UHC's misrepresentations, Medicare patients will be left to decide for themselves whether their provider, Fairview, or their insurance company, UHC, is telling the truth.

59. Fairview Medicare patients who are considering switching Medicare plans also face imminent harm. These are patients who are currently *not* enrolled in a UHC MA plan, but who may be considering their options for 2027.

60. These non-UHC patients may elect to switch to a UHC MA plan under the false belief that Fairview will be in-network.

61. As a result, these patients will discover, after January 1, 2027, that UHC misrepresented Fairview's network status and, as a result, will need to either find a new

provider who is in-network with UHC or forgo their ability to use their full Medicare benefits to receive necessary medical care.

62. Finally, prospective Fairview patients will be harmed because they may enroll or renew coverage with a UHC MA plan under the false belief that Fairview (with its award-winning hospitals and major academic medical center) will be in-network, only to discover that is not true after the enrollment periods close.

63. Absent court action, these patients will be trapped with UHC coverage that does not provide them with access to the benefits UHC promised them when they enrolled.

64. Fairview operates the only major academic medical center in the Twin Cities metro area and provides numerous advanced medical and surgical services that are not available at other hospitals in the seven-county metropolitan area.

65. For example, Fairview and Mayo Clinic are the only providers in Minnesota who offer certain advanced specialty services.

66. On information and belief, Mayo Clinic is also no longer in network with UHC MA plans and, therefore, patients seeking highly specialized care may no longer be able to access in-network benefits for their conditions if they select a UHC MA plan.

67. But because UHC has falsely represented to the public that Fairview will be in network for 2027, those patients may sign up for a plan that does not, in fact, offer in-network coverage for treatment they need.

68. If UHC does not correct its false statements immediately, and certainly before the annual enrollment period opens on October 15, Patients who enroll in UHC's

MA plan will do so under the false impression that they will have convenient access to these unique services at the Fairview hospitals when, in fact, they will not.

**E. UHC's False Statements Will Irreparably Harm Fairview.**

69. UHC's false statements will irreparably harm Fairview's reputation, interfere with Fairview's ability to serve patients, and cause future financial harm that will be unrecoverable absent immediate relief.

70. Fairview must correct the false statements UHC made to the public and its patients, which will cause confusion and a negative experience for patients.

71. Health insurance can be confusing even when all parties are being truthful. But when patients are confronted with conflicting information from their doctor and their health plan, that confusion compounds.

72. Indeed, patients may conclude that UHC has listed Fairview as in-network because they reasonably believe Fairview will renew its contract at some point before January 1, 2027.

73. But that impression is false because Fairview has unequivocally made clear to UHC that it will not be renewing its contract for UHC MA plans.

74. Fairview will incur substantial administrative costs as a result of UHC's false statements because it will need to answer patient questions and counsel patients on their coverage options.

75. Fairview has already undertaken efforts to minimize confusion by contacting patients with UHC MA plans to inform them of Fairview's change in network status as of January 1, 2027.

76. For example, Fairview is already planning communications to its 33,000 UHC MA patients to ensure they are aware that Fairview's out-of-network status for 2027 has not changed, and any information to the contrary that may be received from UHC is incorrect.

77. The problem is even worse for patients who are currently enrolled in a non-UHC Medicare plan because Fairview will not know whether those patients intend to switch plans during the open enrollment period that runs from October 15 to December 7, 2026.

78. For example, if a patient currently enrolled in a non-UHC Medicare plan switches to a UHC plan on December 7 but had previously scheduled a procedure on January 4, 2027, Fairview will not have learned of that change until after the patient is locked into a UHC plan for 2027. That patient might exercise their option to change in the open enrollment period before March 31, 2027, but doing so could interfere with eligibility determination and scheduling and cause confusion and delays to their planned procedure.

79. In fact, Fairview may not learn of the change in coverage until shortly before the patient arrives for the procedure. The patient will be forced to find another provider in order to access their Medicare benefits or elect to receive the care on an out-of-network basis.

80. For these types of situations, Fairview will expend administrative staff time as registration staff and patient care coordinators will need to undertake special efforts to clarify the enrollment status of Medicare patients. These staff will also need to educate

patients on their options so that if patients choose to lose in-network access to their doctor in order to keep their UHC coverage, they are fully informed before making that decision.

81. Fairview will separately suffer financial losses in 2027 caused directly by UHC's false statements.

82. For patients who enroll or renew a UHC MA plan because they believe they can keep going to an in-network doctor of their choice at Fairview, they will need to switch doctors after January 1, 2027 and will no longer have the choice of switching to a different Medicare plan to keep their in-network doctor after March 31.

83. Fairview will no longer be able to provide services to those patients and will lose the revenue it would have otherwise earned had its patients switched to a plan where Fairview was in network.

84. Those financial harms will be challenging, if not impossible, to measure because Fairview would need to identify which patients stopped seeing their Fairview provider because they were forced to and which patients stopped because they preferred to keep their UHC coverage.

85. UHC's financial motives for an inaccurate directory are clear. The more patients who enroll in UHC MA plans, the more money UHC can earn.

86. For every patient who UHC enrolls in its MA as a result of its deception about the true scope of its network, UHC receives a payment.

87. By falsely advertising that Fairview is in-network with UHC MA plans, UHC has used Fairview's name, reputation, and good-will in the community to improperly obtain enrollees in its MA plans.

88. Fairview did not agree that UHC could use Fairview's name in advertising its MA plans for 2027 and expressly instructed UHC not to do so.

## V. CAUSES OF ACTION

### COUNT I
### LANHAM ACT – FALSE ADVERTISING
### 15 U.S.C. § 1125(a)

89. Plaintiff incorporates by reference each and every paragraph above as though fully set forth herein.

90. Defendant has made an objectively false statement of fact by listing Fairview as an in-network provider on its provider directories for 2027 UHC MA plans.

91. This statement of fact is literally false on its face because Fairview has not renewed, and has no intention of renewing, its contract with UHC for MA plans.

92. Fairview has informed UHC, in writing and on multiple occasions, that it will not remain in network with UHC MA plans beginning January 1, 2027.

93. This literally false statement will actually deceive, and has the tendency to deceive, a substantial segment of UHC's audience because Medicare patients will rely on UHC's provider directories to shop for MA plans and choose a Medicare plan for 2027.

94. Defendant's false statement is material to Minnesota Medicare beneficiaries because Fairview is a major health system operating throughout the state of Minnesota and owns and operates one of state's two major academic medical centers.

95. The scope of network benefits is a major consideration for Medicare beneficiaries and many select plans based on which providers are in network.

96. Defendant caused its false statements to enter interstate commerce by making its false statements through its website and on printed materials available by mail upon request.

97. Fairview has been, and will continue to be, injured by Defendant's false statements because it must contact patients to ensure they understand that Fairview will not be in-network with UHC MA plans in 2027, notwithstanding UHC's representations to the contrary.

98. Critically, Fairview will lose current patients who enroll or renew in UHC MA plans under the false impression that Fairview remains in network in 2027.

99. Patients who enroll in UHC MA plans may not discover that Fairview is, in fact, out-of-network until after annual enrollment closes.

100. Fairview will suffer reputational damage and its providers will lose existing relationships with their patients as a result, because once the patients learn that Fairview is not actually in-network, they may not be able to switch to a Medicare plan where Fairview is actually in network.

101. Fairview will suffer monetary losses when it loses relationships with current patients because those patients will need to go to a different provider that is in-network and Fairview will lose revenue for providing services to those patients.

102. These injuries to Fairview are and will be directly caused by UHC's false representations that Fairview is in-network for UHC MA plans in 2027.

103. Fairview is entitled to injunctive relief to stop UHC's misrepresentations in advertising, specifically, its ongoing representations through online provider directories,

online information advertising the scope of its MA network, and any printed materials describing the scope of its MA network.

104. Fairview is entitled to monetary relief in the form of damages to compensate it for administrative staff time it spends correcting patient confusion and helping patients navigate their insurance options as a result of UHC's misrepresentations, as well as lost revenue for health care services it would have otherwise provided to patients.

105. Fairview is further entitled to disgorgement of profits, which UHC obtained as a result of its misrepresentations to the public about the scope of its MA network.

106. Fairview is further entitled to an award of attorney's fees and costs pursuant to 15 U.S.C. § 1117(a).

**COUNT II**
**UNIFORM DECEPTIVE TRADE PRACTICES ACT ("UDTPA")**
**MINN. STAT. §§ 325D.43–.48**

107. Plaintiff incorporates by reference each and every paragraph above as though fully set forth herein.

108. UHC engaged in deceptive and unfair trade practices when selling MA policies for 2027 in Minnesota because it falsely represented that Fairview would be in-network for those plans.

109. By listing Fairview as an in-network provider for MA plans in 2027, UHC caused a likelihood of confusion or misunderstanding as to the benefits available under its MA plans and as to its association, affiliation, and connection with Fairview

110. By listing Fairview as an in-network provider for MA plans in 2027, UHC has represented that its MA plans had benefits that those plans did not have and represented that it has an association, affiliation, and connection with Fairview when it does not.

111. These acts constitute deceptive trade practices under Minn. Stat. § 325D.44, subd. 1.

112. Fairview is therefore entitled to injunctive relief to stop UHC's misrepresentations in advertising, specifically, its ongoing representations through online provider directories, online information advertising the scope of its MA network, and any printed materials describing the scope of its MA network.

113. UHC willfully engaged in these deceptive trade practices because it was expressly told that Fairview would not remain in network, acknowledged Fairview's communications confirming this fact, and nevertheless refused to indicate that Fairview would be out-of-network for UHC MA plans in 2027.

114. Fairview is therefore further entitled to an award of attorney's fees and costs pursuant to Minn. Stat. § 325D.45, subd. 2.

## COUNT III
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONMIC ADVANTAGE
## MINNESOTA COMMON LAW

115. Plaintiff incorporates by reference each and every paragraph above as though fully set forth herein.

116. Fairview has a reasonable expectation of economic advantage with respect to current and prospective patients because it reasonably expects to be paid for health care services it provides to those patients.

117. UHC is aware of Fairview's expectation of payment for health care services it provides to patients, including Fairview's important role as a health care provider in Minnesota, particularly through its provision of unique advanced medical services at the only major academic medical center in the Twin Cities metropolitan area.

118. UHC has interfered with Fairview's relationships with its patients and right to payment for providing health care services to those patients by misrepresenting that Fairview would continue to be in-network with its MA plans after January 1, 2027.

119. UHC's interference was intentional because Fairview expressly and unambiguously informed UHC in writing and on multiple occasions that it would no longer contract with UHC's MA plans after January 1, 2027.

120. But for UHC's interference, Fairview would have been able to maintain pre-existing patient relationships and create new relationships with patients enrolled in a UHC MA in 2027 because those patients would have enrolled in a different option for Medicare coverage for which Fairview was in-network.

121. As a direct result of UHC's misrepresentations, Fairview is at risk of losing up to 33,000 current patients who are enrolled in a UHC MA plan because those patients will have been falsely told by UHC that Fairview remains in network for 2027.

122. Fairview is entitled to injunctive relief to stop UHC's tortious interference, specifically, its ongoing representations through online provider directories, online

information advertising the scope of its MA network, and any printed materials describing the scope of its MA network.

123. Fairview is entitled to monetary relief in the form of damages to compensate it for administrative staff time it spends correcting patient confusion and helping patients navigate their insurance options as a result of UHC's misrepresentations, as well as lost revenue for health care services it would have otherwise provided to patients.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court enter the following judgment, in Plaintiff's favor:

1. A temporary restraining order on or before annual enrollment begins on October 15, 2026 prohibiting UHC from making misrepresentations in violation of the Lanham Act, including misrepresentations made online and in print materials, regarding Fairview's network status with UHC MA plans for plan years beginning on January 1, 2027;

2. A permanent injunction prohibiting UHC from making misrepresentations in violation of the Lanham Act and UDTPA, including misrepresentations made online and in print materials, regarding Fairview's network status with UHC MA plans for plan years beginning on January 1, 2027;

3. An order awarding Fairview disgorgement of profits UHC earns from Fairview patients who enroll in a UHC MA plan for plan year 2027;

4. An award of compensatory damages to repay Fairview for the costs it incurred to contact Medicare patients to ensure they fully understand their choices and the consequences of choosing to remain enrolled in a UHC MA plan for 2027;

5. An award of attorney's fees, costs, expenses and pre-judgment and other statutory interest as permitted by law; and

6. Such other relief as is just and equitable.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: October 1, 2026

*/s/ David W. Asp*
David W. Asp, MN #344850
Derek C. Waller, MN #0401120
Jackson R. Tate, MN #0505581
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
dwasp@locklaw.com
dcwaller@locklaw.com
jrtate@locklaw.com

*Attorneys for Plaintiff Fairview Health Services*